## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CRIMINAL ACTION** |
| v. ) | |
| ) | **No. 09-20005-KHV** |
| HECTOR EDUARDO GARCIA- ) | |
| GALLARDO, ) | |
| ) | |
| LUIS LOZANO-MIRANDA, ) | |
| ) | |
| GUADALUPE RUIZ, ) | |
| aka "GUADALUPE REYES" ) | |
| aka "LUPE," ) | |
| ) | |
| MARISELA RUIZ, ) | |
| ) | |
| FRANCISCO JAVIER RUIZ-NAJERA, ) | |
| ) | |
| and ) | |
| ) | |
| VINCENT RAY MAREZ, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the government's Motion To Review Release Order

(Doc. #47) filed January 16, 2009 and Motion To Review Release Order (Doc. #117) filed February

3, 2009.

### I.    Procedural Background

On January 7, 2009, a grand jury indictment charged Luis Lozano-Miranda , Hector Eduardo

Garcia-Gallardo and three others with one count of conspiracy to distribute and possess with intent

to distribute 500 grams or more of a mixture and substance containing methamphetamine (Doc.

#29).  On January 16, after a detention hearing, Magistrate Judge David J. Waxse ordered Garcia-

Gallardo and Lozano-Miranda released on certain conditions pending trial. <u>See</u> Docs. #38, 39. On January 28, 2009, the grand jury returned a superseding indictment against Garcia-Gallardo, Lozano-Miranda, Guadalupe Ruiz, Francisco Ruiz-Najera, Marisela Ruiz, Vincent Marez and 19 others, on charges of conspiracy to distribute and possess with intent to distribute more than five hundred grams of a mixture and substance containing methamphetamine, a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846. The indictment alleged 15 substantive counts against various defendants. <u>See</u> Doc. #54. After a detention hearing, Magistrate Judge Waxse overruled the government's motion for detention as to certain defendants and ordered Guadalupe Ruiz, Francisco Ruiz-Najera, Marisela Ruiz and Vincent Marez released on conditions. <u>See</u> Docs. ##123, 124, 126, 127, 129, 130, 133, 134.

On February 5, 2009, the Court held a hearing on the government's motions to review the release orders. For reasons stated below, the Court finds that defendants should be detained pending trial.

## II.    <u>Standard Of Review</u>

The government may seek review of a magistrate judge's order of release. <u>See</u> 18 U.S.C. § 3145(a)(1). The district court reviews *de novo* a magistrate judge's order of release. <u>See</u> <u>United States v. Cisneros</u>, 328 F.3d 610, 616 n.1 (10th Cir. 2003); <u>United States v. Lutz</u>, 207 F. Supp.2d 1247, 1251 (D. Kan. 2002). The district court must make its own *de novo* determination of the facts and legal conclusion with no deference to the magistrate judge's findings. <u>See Lutz</u>, 207 F. Supp.2d at 1251. A *de novo* evidentiary hearing, however, is not required. <u>See id.</u> The district court may either "start from scratch" and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted. <u>United States v. Torres</u>, 929 F.2d

-2-

291, 292 (7th Cir. 1991). The Federal Rules of Evidence do not apply to detention hearings. See 18 U.S.C. § 3142(f); Fed. R. Evid. 1101(d)(3). The Court may allow the parties to present information by proffer or it may insist on direct testimony. See 18 U.S.C. § 3142(f).

## III.   Standards For Detention

Under the Bail Reform Act of 1984, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the Court must take into account the available information concerning –

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including –
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act provides a rebuttable presumption of risk of flight or danger to the community when a defendant is charged with an offense for which the Controlled Substances Act, 21 U.S.C. § 801 et seq., prescribes a maximum term of imprisonment of ten years or more. See 18 U.S.C. § 3142(e); see also United States v. Stricklin, 932 F.2d 1353, 1354 (10th Cir. 1991) (upon finding of probable cause that defendant committed federal drug offense carrying maximum prison

term of ten years or more, rebuttable presumption that no conditions of release will assure defendant's appearance and safety of community).  The indictment charges defendants with conspiracy to distribute and possess with intent to distribute more than 500 grams of a mixture and substance containing methamphetamine.  The conspiracy count carries a minimum term of 10 years and a maximum term of life imprisonment, thereby triggering the rebuttable presumption for detention.  See United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990) (grand jury indictment provides probable cause required by the statute to trigger the presumption); see United States v. Carr, No. 07-40034-JAR, 2007 WL 2253200, at *6 (D. Kan. July 31, 2007).

Once the presumption arises, the burden of production shifts to defendant.  Stricklin, 932 F.2d at 1354.  Defendant's burden of production is not heavy, but defendant must produce some evidence.  Id.; United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986) (to rebut presumption, defendant must come forward with credible evidence of something specific about charged criminal conduct or individual circumstances that tends to show that what is true in general is not true in the particular case).  Even if defendant meets the burden of production, the presumption remains a factor in determining whether to release or detain.  Id.  "Thus the mere production of evidence does not completely rebut the presumption, and in making its ultimate determination, the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society."  United States v. Holmes, Case No. 05-40066-01-SAC, 2007 WL 293907, at *2 (D. Kan. Jan. 29, 2007) (quoting United States v. Hare, 837 F.2d 796, 798-99 (5th Cir. 1989) (footnote omitted)).  The burden of proof remains with the government to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community.  Lutz, 207 F. Supp.2d at 1251

(burden of persuasion regarding risk of flight and danger to community always remains with government). The government must prove dangerousness to any other person or the community by clear and convincing evidence. Id. at 1252.

**IV.   Analysis**

At the hearing on February 5, 2009, the government presented testimony by Drug Enforcement Task Force Officer Justin Branner and Immigration and Customs Enforcement ("ICE") Agent Tim Ditter. The Court also admitted five exhibits, including transcripts of wiretap intercepts conducted during a wide-ranging drug trafficking investigation. The Court has reviewed the evidence, the pretrial services reports and the parties' briefs. After considering the applicable factors, the Court finds that the government's motions for detention should be sustained.[1]

A.   Luis Lozano-Miranda

    1.   Nature And Circumstances Of The Offense

As noted, the conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

    2.   Weight Of The Evidence

Officer Branner testified that on December 30, 2008, as part of an on-going drug trafficking investigation, agents conducted surveillance of Baltazar Quiroz (a/k/a/ Hector Eduardo Lozano-Miranda) and his wife, Araceli Lozano-Miranda. As the couple approached their residence at 421 Brooklyn Avenue, agents noticed a purple mini-van with Nebraska plates following them down an alley. Luis Lozano-Miranda then exited the 421 Brooklyn house and opened the detached

---

[1]    Pursuant to 18 U.S.C. § 3142(i), this memorandum and order constitutes the Court's written findings of fact and reasons for detention.

garage door.  The van  pulled into the garage and Luis secured the door.  Hector Eduardo Garcia-Gallardo and Uriel Lopez-Montejano then entered the residence with Quiroz, Luis and Araceli.

Shortly after the van arrived, Quiroz and Araceli drove away in Quiroz's vehicle, a Nissan Titan.  Agents observed the couple purchasing food sealers and other plastic material at a nearby store.  The couple then returned to the house at 421 Brooklyn.  Garcia-Gallardo and another unidentified male then exited the residence and walked toward the detached garage.  Garcia-Gallardo looked around, as if to stand guard, while the other man entered the garage.  After a few moments, Garcia-Gallardo went inside the garage.  Both individuals then left the garage and returned to the residence.  A few minutes later, Garcia-Gallardo, Uriel, Quiroz and Luis left the residence.  Quiroz went to his Nissan as Garcia-Gallardo, Uriel, and Luis re-entered the garage.  Luis opened the garage door and Uriel drove out in the van with Garcia-Gallardo as a passenger.  The van followed Quiroz's Nissan until it reached I-29 northbound.  At that point, Quiroz drove back toward his residence.  Shortly thereafter, law enforcement stopped Quiroz's vehicle and searched it.  They found approximately 248 gross grams of crystal methamphetamine underneath Quiroz's seat.

Officers then stopped the van, and Uriel consented to a search.  In the van, agents found several false compartments which contained $95,820.00 in cash.  Agents placed Uriel and Garcia-Gallardo in a patrol vehicle and recorded them devising a "cover story."

After his arrest, Quiroz called a third party and told him to contact his wife and tell her to "get everything out of the house."  Agents intercepted this phone call and responded to the house at 421 Brooklyn. They found Luis Lozano-Miranda on the back porch next to a fire.  Agent Branner testified that the fire smelled like burned plastic and grease.  Agents searched the residence and found approximately six pounds of methamphetamine wrapped in plastic and coated in grease.

Officers also found drugs in the detached garage.

Luis Lozano-Miranda points out that the government has not produced direct evidence that he participated in loading or unloading contraband while the van was in the garage. He also notes that agents found no cash, drugs or weapons on his person, and that the wiretap calls do not implicate him. Circumstantial evidence suggests that Lozano-Miranda assisted Quiroz, a significant drug trafficker, with the transfer of money and drugs. On the whole, however, the Court finds that the weight of the evidence does not strongly favor either detention or release.

3.      History And Characteristics Of Defendant

Lozano-Miranda is 21 years old and is in good physical health. He is a citizen of Mexico. He moved to the Kansas City area from Mexico in 2004. Lozano-Miranda is in the United States illegally, and ICE has lodged a detainer with the U.S. Marshals Service.

Lozano-Miranda's father resides in Mexico and his mother is deceased. He has eight sisters and five brothers. Four of his sisters and one of his brothers live Kansas City, Kansas. One of his sisters is a co-defendant in this case and is currently incarcerated. Two of his brothers are incarcerated at CCA in Leavenworth, Kansas on an unrelated matter. Three of his sisters and one of his brothers reside in Mexico.

Lozano-Miranda and his wife were married in Mexico. They have two young children. In December of 2005, they moved to Kansas City, Kansas. Lozano-Miranda went to Mexico with his wife for seven months in 2008. They returned to Kansas City, Kansas in October of 2008. Since then, they have lived with Lozano-Miranda's sister, her three children and other relatives. If released, Lozano-Miranda's sister advises that he may reside with her.

On September 30, 2008, in San Ysidro, California, ICE charged Lozano-Miranda with fraud,

-7-

misuse of a visa, entry of an alien at an improper time or place and alien inadmissibility.  He was deported on expedited removals on September 30, 2008 and October 4, 2008 and voluntarily returned to Mexico on October 5, 2008.[2]  ICE reports that Lozano-Miranda is now barred from the United States for 20 years.

While defendant's status as a deportable alien does not alone mandate detention, it is a factor which weighs heavily in the risk of flight analysis.  See Chavez-Rivas, 536 F.Supp.2d 962, 964 n. 3 (E.D. Wis. 2008) (citations omitted).  The government argues that Lozano-Miranda poses a flight risk because he has an ICE detainer, he has strong ties to Mexico and he is facing a sentence of ten years to life on the charges in this case.  The Court finds that despite his family ties to Kansas City, Kansas, defendant presents a significant risk of flight such that conditions of release could not reasonably assure his presence at trial.

4.      Danger To The Community

The evidence would likely support a finding that Lozano-Miranda is a danger to the community.  The Court need not decide this issue, however, because it has determined that no condition or combination of conditions will reasonably assure that defendant will appear in this matter.

5.      Conclusion

Based upon the evidence proffered at the hearing, the Court concludes that no set of conditions of release will ensure that defendant will appear on the charges.  The government has carried its burden of proving that pretrial detention of Luis Lozano-Miranda is warranted.

B.      Hector Eduardo Garcia-Gallardo

---

[2]      Previously, defendant had voluntarily returned to Mexico on July 25, 2006.

-8-

1.      Nature And Circumstances Of The Offense

The conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

2.      Weight Of The Evidence

As noted above, Officer Branner testified that on December 30, 2008, Garcia-Gallardo entered the residence and garage at 421 Brooklyn.  Branner testified that Garcia-Gallardo appeared to keep a look-out on the garage as the money and drugs were presumably transferred in the garage. Further, Garcia-Gallardo rode in the van which Uriel drove and in which officers found $95,820.00 in U.S. currency.

Garcia-Gallardo asserts that the government has not produced direct evidence that he handled or exerted physical control over illegal drugs or drug proceeds or that he was aware of the money found in the van.  The Court agrees that the government did not introduce evidence to establish that Garcia-Gallardo knew that illegal drug trafficking activity was occurring in the garage when he was standing outside of it.  Further, there is no evidence that he knew of the money in the van.  Finally, the wiretap transcripts introduced into evidence do not implicate him.  The Court finds that the weight of the evidence factor weighs in favor of release.

3.      History And Characteristics Of Defendant

Garcia-Gallardo is 38.  He was born in Mexico and moved to Las Vegas, Nevada at the age of 18.  He has lived in Las Vegas since then except for a time when he was deported in 1993. He is in the United States illegally, and ICE has lodged a detainer with the U.S. Marshals Service. He does not have any other reported criminal history.

Since 2001, Garcia-Gallardo has been in a relationship with Alma Mendoza, a Mexican citizen, and they have two children, Hector, Jr., age 7, and Alex, age 7 months.   He also has two children from a former marriage to Lori Garcia, and those children live with their mother in Pirone, Nevada.   Garcia-Gallardo's parents, two sisters and two brothers reside in Mexico.

As noted, while a defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of flight analysis.  See Chavez-Rivas, 536 F.Supp.2d at 964.  The government argues that defendant poses a risk of flight because he has an ICE detainer, he has strong ties to Mexico and he is facing a sentence of ten years to life on the charges in this case.  The Court finds that despite his family ties to Las Vegas, Nevada, defendant presents a significant risk of flight such that conditions of release could not reasonably assure his presence at trial.[3]

4.      Danger To The Community

The evidence which the government has presented as to Garcia-Gallardo's participation in the charged conspiracy, combined with his relative lack of a criminal history, suggest that he may not be a danger to the community.  The Court need not make this determination, however, because it has determined that no condition or combination of conditions will reasonably assure that he will appear in this matter.

5.      Conclusion

---

[3]      Although Judge Waxse imposed a home confinement restriction and passive GPS monitoring, the government convincingly argues that monitoring would not prevent defendant from fleeing if he so chose.

Based upon the evidence proffered at the hearing, the Court concludes that no set of conditions of release will ensure Garcia-Gallardo's presence at trial. The government has carried its burden of proving that pretrial detention is warranted.

C.    Guadalupe Ruiz

     1.    Nature And Circumstances Of The Offense

As noted, the conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

     2.    Weight Of The Evidence

During the investigation of the conspiracy charged in this case, the government intercepted a number of drug-related calls in which Guadalupe Ruiz arranged drug transactions. On October 31, 2008, police stopped the car which Guadalupe Ruiz was driving. Officers searched the car and found four ounces of methamphetamine. The grand jury found probable cause that Guadalupe Ruiz and her daughter, Marisela Ruiz, possessed the drugs with intent to distribute. On January 28, 2009, officers executed a search warrant at the residence where Guadalupe lived with her husband, Francisco Ruiz-Najera, their children and grandchildren. Officers seized detailed drug ledgers in Marisela's room, as well as a bulletproof vest. The weight of the evidence against Guadalupe weighs in favor of detention.

     3.    History And Characteristics Of Defendant

Guadalupe Ruiz is 42 years old. She is a citizen of the United States and has lived in Kansas City, Kansas all of her life. She has six children from her marriage to co-defendant Francisco Ruiz Najera. Her daughter, Marisela Ruiz, is also a co-defendant in this case. At the time of her arrest, Guadalupe resided with her husband, five of her children and two grandchildren.

Guadalupe Ruiz is in good physical health.  She reports that she used marijuana as a teenager but has no other substance abuse history.  She has been convicted in municipal court on charges of larceny, theft, driving with a suspended driver's license and violation of city health and animal ordinances.  On October 31, 2008, police in Kansas City, Kansas arrested her for possession of methamphetamine, and that case has been referred to the prosecutor.

The government presented evidence that Joanna Gomez reported to authorities that Guadalupe Ruiz's family was engaged in drug trafficking.  Guadalupe Ruiz later told Gomez not to go into a certain bar because the family would "tear her up."  Although Guadalupe Ruiz characterizes this interaction as a "warning" by which a confrontation was voided, the Court interprets it as a threat to Gomez.

4.    Danger To The Community

Based on her prior conduct, the Court finds that Guadalupe Ruiz has not rebutted the statutory presumption that she is a danger to the community, or presented evidence that if released she will abandon her drug trafficking activities.  Further, based on her threat to Gomez, she would pose a risk of danger to the community.

5.    Conclusion

Based upon the evidence proffered at the hearing, the Court concludes that no set of conditions of release will protect the community from the danger of additional crimes.  The government has carried its burden of proving that pretrial detention of Guadalupe Ruiz is warranted.

D.    Francisco Ruiz-Najera

1.    Nature And Circumstances Of The Offense

As noted, the conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

-12-

2.      Weight Of The Evidence

Officer Branner testified that officers intercepted phone calls in which Secundinio Arias-Garcia told Guadalupe Ruiz to tell her husband, Ruiz-Najera, to meet Arias-Garcia at various gas stations to conduct drug transactions.   Further, surveillance established that Ruiz-Najera transported his wife to and from suspected narcotics meetings with other conspirators.

As noted, on January 28, 2009, officers executed a search warrant at the residence where Ruiz-Najera lived with his wife, their children and grandchildren.  Officers seized a bulletproof vest and detailed drug ledgers found in his daughter Marisela's room.  The weight of the evidence against Ruiz-Najera weighs in favor of detention.

3.      History And Characteristics Of Defendant

Francisco Ruiz-Najera is 48 years old.  He is a citizen of Mexico and a permanent resident of the United States.  He married co-defendant Guadalupe Ruiz in 1989, and they have six children.  His daughter, Marisela Ruiz, is a co-defendant in this case.  He has lived in Kansas City, Kansas since at least 1994.  At the time of his arrest, he resided with his wife, five of their children and two grandchildren.

Ruiz-Najera is in good physical health.  He reports no history of substance abuse.

Ruiz-Najera has no reported criminal convictions.  The municipal court in Kansas City, Kansas has issued several bench warrants against Ruiz-Najera for violations including driving too fast for conditions, driving with a suspended and revoked driver's license and no insurance.  Before he obtained his permanent residence status, he had twelve contacts with ICE for entry without inspection.

4.      Danger To The Community

Based on his prior conduct, the Court finds that Ruiz-Najera has not rebutted the

-13-

statutory presumption that he is a danger to the community.  He has not presented evidence to show that if released he will abandon his drug trafficking activities.

     5.     Conclusion

Based upon the evidence proffered at the hearing, the Court concludes that no set of conditions of release will protect the community from the danger of additional crimes.  The government has carried its burden of proving that pretrial detention of Franciso Ruiz-Najera is warranted.

E.     <u>Marisela Ruiz</u>

     1.     Nature And Circumstances Of The Offense

As noted, the conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

     2.     Weight Of The Evidence

On  October 31, 2008, police stopped the car in which Marisela was riding and found four ounces of methamphetamine in the car.  The grand jury found probable cause that Marisela and her mother, Guadalupe Ruiz, possessed the drugs with intent to distribute.  On January 28, 2009, officers executed a search warrant at the residence where defendant lived with her parents.  Officers seized detailed drug ledgers in Marisela's room.  The weight of the evidence against Marisela weighs in favor of detention.

     3.     History And Characteristics Of Defendant

Marisela Ruiz is 21 years old.  She is a citizen of the United States and has lived in Kansas City, Kansas all of her life.  She has  two children, ages 2½ and 3 weeks.  She is not  married.  At the time of her arrest, she lived with her children, her parents and three minor siblings.

Marisela Ruiz is in good physical health.  She began using alcohol and marijuana as a young

teenager and reports that she last used alcohol in early 2007, and last used marijuana over a year ago.

Marisela Ruiz has no record of any criminal convictions.  On October 14, 2007, the municipal court in Kansas City, Kansas issued a bench warrant for obstructing an officer.  On October 31, 2008, Kansas City police arrested her for possession of methamphetamine.  That case has been referred to the prosecutor.

Agent Ditter testified that Marisela's brother, David Ruiz, was arrested on drug charges in 2007.  After David's arrest, Marisela allegedly assaulted his ex-girl friend, Joanna Gomez, because Gomez told authorities that David was selling drugs.  No charges were filed against Marisela arising from the alleged assault.

      4.      Danger To The Community

Based on her prior conduct, the Court finds that Marisela Ruiz has not rebutted the statutory presumption that she is a danger to the community.  She has not presented evidence that if released she will abandon her drug trafficking activities.

      5.      Conclusion

Based upon the evidence proffered at the hearing, the Court concludes that no set of conditions of release will protect the community from the danger of additional crimes.  The government has carried its burden of proving that pretrial detention of Marisela Ruiz is warranted.

F.      <u>Vincent Ray Marez</u>

      1.      Nature And Circumstances Of The Offense

As noted, the conspiracy count carries a minimum term of 10 years and a maximum term of imprisonment of life, thereby triggering the rebuttable presumption for detention.

      2.      Weight Of The Evidence

Officer Branner testified that agents intercepted phone calls during which Marez

arranged purchases of narcotics from Jose Jimenez-Alvarez (a/k/a "Pelon") in Kansas City.  Phone intercepts indicate that Marez sold methamphetamine to customers in Ottawa, Kansas.  Video surveillance indicated that Marez periodically visited Pelon's residence in Kansas City, Kansas.

On May 19, 2008, Sheriff's Officers in Osage County arrested defendant for possession of drug paraphernalia.  In a recorded call to a woman named "Sue," Marez stated that after his arrest, he flushed five grams of methamphetamine down the jail toilet.  He asked Sue for methamphetamine.

Video surveillance on January 26, 2009, showed defendant meeting with Pelon in Kansas City.  After he left, the Ottawa police stopped him on a traffic violation.  During a search after the stop, the officers found seven grams of methamphetamine in his possession.

3.     History And Characteristics Of Defendant

Marez is a 24 year-old United States citizen who has lived  his entire life in Franklin County, Kansas.  He recently began living with his mother after he and his girlfriend, Jessica Velez, began to have domestic problems.  He and Jessica have two children, ages 2 and 6.

Marez is in good physical health.   He reports that for the past several years up to his arrest, he used methamphetamine, alcohol and marijuana in unidentified amounts.

At age 16, Marez was convicted of driving under the influence of alcohol or drugs.  In 2004, Marez was convicted on felony charges of possession of stolen property and no drug stamp and a misdemeanor charge of possession of drug paraphernalia.  Currently, a misdemeanor charge of domestic battery is pending in Franklin County, Kansas.

4.     Danger To The Community

Marez argues that his role in the conspiracy – a "very small scale distributor" – rebuts the presumption of dangerousness.  The government counters that Officer Branner testified that five grams of methamphetamine (the amount of drugs which defendant flushed down the jail toilet)

equates to 20 dosage units.  The government argues that as a distributor in Ottawa during the course of the conspiracy, defendant's distribution practices made an impact.  The government asserts that defendant has not rebutted the statutory presumption he is a danger to the community.

Marez admits that until his recent arrest, he used methamphetamine.  Further, the record shows that domestic battery charges are pending against him.  The Court finds that defendant has not pointed to evidence to rebut the presumption that he is a danger to the community.

  5. Conclusion

Based upon the evidence proffered at the hearing, the Court concludes Marez has not presented evidence to show that if released  he will abandon his drug trafficking activities.  Further, based on the charge of domestic battery of Jessica Velez, he would pose a risk of physical danger to the community.  The government has carried its burden of proving that pretrial detention is warranted.

**IT IS THEREFORE ORDERED** that the government's <u>Motion To Review Release Order</u> (Doc. #47) filed January 16, 2009 and <u>Motion To Review Release Order</u> (Doc. #117) December 5, 2007 be and hereby are **SUSTAINED**.  Defendants Luis Lozano-Miranda, Hector Eduardo Garcia-Gallardo, Guadalupe Ruiz, Francisco Ruiz-Najera, Marisela Ruiz and Vincent Marez shall remain detained pending trial.

Dated this 20th day of February, 2009 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge