**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAVIER DOZAL and JESUS MUNOZ, ) <br> ) <br> Defendants. ) <br> _____) | CRIMINAL ACTION <br><br> No. 09-20005-08/23-KHV |

## MEMORANDUM AND ORDER

On January 7, 2009, a grand jury charged five individuals with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 846. See Indictment (Doc. #29). On January 28, 2009, a grand jury returned a superseding indictment which charged 20 additional individuals, including Javier Dozal and Jesus Munoz, with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. See Superseding Indictment (Doc. #54). The superseding indictment also charges Dozal with using a cell telephone in committing, causing and facilitating the conspiracy in violation of 21 U.S.C. § 843(b) and charges Munoz with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). This case is before the Court on the motion to suppress the fruits of electronic surveillance on target telephones 3, 6, 12 and 15 filed by Javier Dozal and Jesus Munoz.[1] On December 17, 2009, the Court held a hearing on the motion. For reasons stated below,

---

[1] Sergio Hernandez-Mosqueda originally filed the motion to suppress as to target phone #14, see Sergio Hernandez-Mosqueda's Motion To Suppress The Fruits Of Electronic Surveillance Conducted On So-Called Kansas City Target Telephone 14 (KCTT-14), With Suggestions In Support Thereof (Doc. #397) filed October 23, 2009, but he later withdrew the
(continued...)

the Court overrules defendants' motion.

## **Factual Background**

On June 6 and 20 and October 10, 2008, as part of the investigation in this case, the government applied for and obtained orders authorizing interception of wire communications under 18 U.S.C. § 2518. Defendants seek to suppress evidence of intercepted communications from target phone #3 (913-231-8658), target phone #6 (913-231-8026) and target phone #12 (239-895-1687). The wiretap applications for target phones #3 and #6 specify the authorizing official. See Gov't Exhibit 8: Application For The Interception Of Wire Communications ¶ 3 (wiretap on target phone #3 authorized by John C. Keeney, Deputy Assistant Attorney General); Gov't Exhibit 13: Application For The Interception Of Wire Communications ¶ 3 (wiretap on target phone #6 authorized by Bruce C. Swartz, Deputy Assistant Attorney General). As to target phone #12, the wiretap application simply states that "[u]nder the power designated to that individual by special designation of the Attorney General pursuant to Order Number 2943-2008 of January 22, 2008, an appropriate official of the Criminal Division has authorized this Application." Gov't Exhibit 17: Application For The Interception Of Wire Communications ¶ 3 (application for target phone #12). In fact, Sigal P. Mandelker, Deputy Assistant Attorney General, authorized the wiretap application for target phone #12. See Gov't Exhibit 32: Memorandum Dated September 11, 2008.

---

[1](...continued)
motion and pled guilty. Dozal and Munoz joined the motion to suppress with respect to target phones #3, #6, #12 and #15. As to target phone #15, the Court overrules defendants' motion as moot because the government did not seek a wiretap for that phone. See Government's Supplemental Response To Defendants' Pretrial Motions (Doc. #540) filed January 19, 2010 at 2 (government did not apply or receive approval for wiretap of target phone #15). Accordingly, this order addresses only target phones #3, #6 and #12.

**Analysis**

Defendants argue that the government unlawfully intercepted wire communications on target phones #3, #6 and #12 because (1) the government did not specify the authorizing official in the wiretap applications and (2) the government did not establish necessity for the wiretaps.

**I.    Failure To Identify Specific Authorizing Official**

Initially, the Court overrules defendants' argument as to target phones #3 and #6 because the wiretap applications for those phones specify the authorizing official. See Gov't Exhibit 8: Application For The Interception Of Wire Communications ¶ 3 (wiretap on target phone #3 authorized by John C. Keeney, Deputy Assistant Attorney General); Gov't Exhibit 13: Application For The Interception Of Wire Communications ¶ 3 (wiretap on target phone #6 authorized by Bruce C. Swartz, Deputy Assistant Attorney General). As to target phone #12, the wiretap application simply states that "[u]nder the power designated to that individual by special designation of the Attorney General pursuant to Order Number 2943-2008 of January 22, 2008, an appropriate official of the Criminal Division has authorized this Application." Gov't Exhibit 17: Application For The Interception Of Wire Communications ¶ 3 (application for target phone #12).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510 et seq., governs the use of wiretaps. To obtain a wiretap authorization order, a law enforcement agent must file an application with a judge of competent jurisdiction. 18 U.S.C. § 2518(1). One of the DOJ officials designated in Section 2516(1) must authorize the application and the order issued pursuant to the application must identify that authorizing official. See 18 U.S.C. §§ 2518(1)(a), (4)(d). Section 2516(1) permits the following officers to authorize a wiretap application:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General.

18 U.S.C. § 2516(1).

A wiretap authorization order is presumed valid, and defendant bears the burden of proof to show otherwise. United States v. Mitchell, 274 F.3d 1307, 1309 (10th Cir. 2001). A defendant may seek to suppress evidence obtained through a wiretap on three grounds: (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval. 18 U.S.C. § 2518(10)(a)

In United States v. Chavez, 416 U.S. 562 (1974), the Supreme Court reviewed an order that named the Acting Assistant Attorney General as the authorizing official, even though the Attorney General had actually authorized the order. Id. at 573-74. The Supreme Court held that the order was "unlawful" under Section 2518(10)(a)(i) because it violated Section 2518(4)(d), which requires a wiretap order to specify the identity of the person authorizing the application. Even so, the Court noted that suppression was not required because the Title III provision which was violated "does not establish a substantive role to be played in the regulatory system." Chavez, 416 U.S. at 578. Similarly, in United States v. Giordano, 416 U.S. 505 (1974), the Supreme Court noted that suppression is only required under Section (10)(a)(i) if the government violates "any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." Giordano, 416 U.S. at 527; see United States v. Radcliff, 331

-4-

F.3d 1153, 1162 (10th Cir.), cert. denied, 540 U.S. 973 (2003).

Defendants rely on Giordano, but in that case, an application incorrectly stated that it had been approved by the Criminal Division Assistant Attorney General when in fact the Executive Assistant of the Attorney General had approved it. The Supreme Court suppressed evidence of the wiretaps because the application was "in fact, not authorized by one of the statutorily designated officials." Giordano, 416 U.S. at 508. The Supreme Court reasoned that approval by DOJ officials "responsive to the political process," id. at 520, was a "critical precondition to any judicial order." Id. at 516.

Here, the DOJ error in the application and corresponding order (failing to include the name of the specific individual who authorized the application) is analogous to the error in Chavez. Reference to the name of the specific individual who authorized the application "does not establish a substantive role to be played in the regulatory system." United States v. White, No. 04-0370, 2004 WL 2823225 (E.D. Pa. Dec. 7, 2004). In Radcliff, supra, a wiretap order identified by title every DOJ official with authority to authorize a wiretap application, and therefore did not meet the requirements of § 2518(4)(d). Radcliff, 331 F.3d at 1160-63. The Tenth Circuit found that the wiretap order was facially insufficient, but that such a defect was only technical and that suppression was not required. Id. at 1162-63. As in Radcliff, the wiretap order for target phone #12 technically violates Section 2518(4)(d) because it does not identify the specific individual who authorized the application. Even so, such a technical defect does not warrant suppression where an authorized DOJ official did in fact approve the wiretap application. See Chavez, 416 U.S. at 577-78; United States v. Traitz, 871 F.2d 368, 379 (3d Cir.) (even if order did not adequately identify individual who approved applications, omissions properly viewed as technical defects not warranting suppression),

cert. denied, 493 U.S. 821 (1989); United States v. Lawson, 545 F.2d 557, 562 (7th Cir. 1975) (technical violation of Section 2518(4)(d) does not require suppression), cert. denied, 424 U.S. 927 (1976); see also United States v. Donovan, 429 U.S. 413, 437 (1977) (evidence not suppressed where legislative history did not suggest that Congress intended specific requirement to play central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance) (citing Chavez, 416 U.S. at 578); cf. Giordano, 416 U.S. at 528 (suppression required when violated provision intended to play central role in statutory scheme).

For these reasons, the Court overrules defendants' motion to suppress based on failure to identify the specific authorizing official in the application and wiretap order for target phone #12.

## II. Necessity

Defendants argue that the government did not establish necessity for the wiretaps of the three target phones. Each wiretap application must include "a full and complete statement" whether "other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This rule is known as the "necessity" requirement. See United States v. Mondragon, 52 F.3d 291, 293 (10th Cir. 1995). In addition, the district judge issuing the wiretap order must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). "Normal" investigative procedures include standard visual and aural surveillance, questioning witnesses and participants in the crime (including through the use of grand juries), search warrants and infiltration of criminal enterprises by undercover agents or confidential informants. United States v. Killingsworth, 117 F.3d 1159, 1163 (10th Cir.), cert. denied, 522 U.S. 961 (1997). The purpose of the necessity requirement is to ensure

that wiretapping, which is relatively intrusive compared with other investigative methods, is not used in situations where traditional investigative techniques would be sufficient to expose the criminal activity. United States v. Edwards, 69 F.3d 419, 429 (10th Cir. 1995), cert. denied, 517 U.S. 1243 (1996). Evidence obtained through a wiretap order that does not meet the necessity requirement must be suppressed. 18 U.S.C. § 2518(10)(a).

As part of the necessity showing under Section 2518, the government is not required "to exhaust all other conceivable investigative procedures before resorting to wiretapping." Edwards, 69 F.3d at 429 (quotations omitted). Thus, in examining necessity challenges to wiretap orders, the Tenth Circuit has upheld the order where

> (1) several investigatory methods had been utilized prior to resort to wiretapping; (2) normal investigative techniques had been frustrated by various problems local police were unable to overcome; (3) increased visual surveillance would have increased the possibility of detection; and (4) potential witnesses were unwilling to testify in court because of fear of reprisal.

United States v. Zapata, 546 F.3d 1179, 1186 (10th Cir.) (quoting Edwards, 69 F.3d at 429-30), cert. denied, 129 S. Ct. 772 (2008).

Here, the affidavit in support of the wiretap for target phone #3 notes that (1) agents knew where one of the targets lived but that without knowing the user of the telephone, surveillance would be futile;[2] (2) although physical surveillance can confirm meetings and other suspected activities between participants in the drug organization, such observations by themselves likely would be

---

[2] The Affidavit for target phone #6 notes that physical surveillance of a residence, which was believed to be used by the owner of target phone #6, was difficult because it was located in rural Wyandotte County and agents were unable to do effective surveillance of the residence without being seen by the targets. See KC TT#6 Affidavit ¶ 34. The Affidavit for target phone #12 notes that during ongoing surveillance of targets and a residence in this investigation, the targets learned of the agents' presence and agreed to talk on another phone. See KC TT#12 Affidavit ¶ 32.

insufficient to prove the purpose of the meetings or other activities, and (3) without wiretaps, further surveillance would be of limited value because organization members would detect surveillance or agents would only get minimally useful information. See Gov't Exhibit 7: <u>Affidavit In Support Of Application For An Order Authorizing The Interception Of Wire Communications To And From KC Target Telephone #3 (KC TT#3)</u> ("KC TT#3 Affidavit") ¶¶ 75-76; see also Gov't Exhibit 13: <u>Affidavit In Support Of Application For An Order Authorizing The Interception Of Wire Communications To And From KC Target Telephone #6 (KC TT#6)</u> ("KC TT#6 Affidavit") ¶¶ 33-39; Gov't Exhibit 16: <u>Affidavit In Support Of Application For An Order Authorizing The Interception Of Wire Communications To And From KC Target Telephone #12 (KC TT#12)</u> ("KC TT#12 Affidavit") ¶¶ 46-51. The affidavit also notes that an initial confidential informant provided limited information but was unable to gain trust in the organization, that high level members of the organization would be unlikely to associate with an undercover agent and that introducing an undercover agent into the group could be a safety concern. See KC TT#3 Affidavit ¶¶ 70-74; see also KC TT#6 Affidavit ¶ 32; KC TT#12 Affidavit ¶¶ 41-45. The affidavit notes that use of search warrants, trash searches, grand jury subpoenas, interviews of subjects or associates and pen registers would be of limited value and that wire communication interception is the best technique with a reasonable likelihood of securing evidence necessary for a successful prosecution. See KC TT#3 Affidavit ¶¶ 77-89; see also KC TT#6 Affidavit ¶¶ 39-50; KC TT#12 Affidavit ¶¶ 41-63. Finally, the affidavit notes the use of other wiretaps on other target phones as well as a telephone toll analysis on target phone #3. See KC TT#3 Affidavit ¶¶ 11-66; see also KC TT#6 Affidavit ¶¶ 14-23; KC TT#12 Affidavit ¶¶ 12-31. The affidavits for target phones #6 and #12, as well as the

affidavits for extensions of the wiretap orders on target phones #3 and #12, provide similar detail.[3] See KC TT#6 Affidavit, KC TT #12 Affidavit; see also Gov't Exhibit 10: Affidavit In Support Of Application For An Order Authorizing The First Extension For Interception Of Wire Communications To And From KC Target Telephone #3 (KC TT#3); Gov't Exhibit 19: Affidavit In Support Of Application For An Order Authorizing The First Extension Of Interception Of Wire Communications To And From KC Target Telephone #12 (KC TT#12).

Defendants argue that the affidavits themselves show that traditional investigative techniques were viable and working, but defendants point to no specific part of the affidavits. The affidavits primarily note some success in wiretaps of phones belonging to other individuals in the drug organization, see, e.g., KC TT#3 Affidavit ¶¶ 11-66, KC TT #6 Affidavit ¶¶ 25, 27-30, 40, but state that further wiretaps are necessary to get more detailed information necessary for a successful prosecution. Defendants have not satisfied their burden to show that the affidavits do not establish necessity. See United States v. Quintana, 70 F.3d 1167, 1169 (10th Cir. 1995) (wiretap order presumed proper; defendant bears burden to overcome presumption).

Defendants also argue that the affidavits contain boilerplate language about necessity. The Court recognizes that the affidavits contain some boilerplate language and that additional factual detail could more persuasively establish the need for wiretaps. Even so, the affidavits sufficiently give "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); see Mondragon, 52 F.3d at 293. In addition, the affidavits

---

[3] The government did not apply for an extension of the wiretap order on target phone #6.

provide sufficient factual detail for the issuing judge to find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); see Killingsworth, 117 F.3d at 1163.

Finally, defendants argue that in obtaining the wiretaps, the government materially misrepresented their investigation by omitting information about successful investigative techniques. Defendants do not specify what information was omitted. From a review of the affidavits, the Court cannot ascertain that the government omitted any material information. As noted above, each of the affidavits primarily details the results of other wiretaps and explains why a further wiretap is necessary to obtain important information about the details of the drug trafficking organization. Defendants have not satisfied their burden of showing that the government omitted any material information. See Quintana, 70 F.3d at 1169 (wiretap order presumed proper; defendant bears burden to overcome presumption).

For these reasons, the Court overrules defendants' motion to suppress based on the necessity for the wiretaps for target phones #3, #6 and #12.

**IT IS THEREFORE ORDERED** that defendants' Motion To Suppress Evidence Obtained From The Electronic Surveillance (Doc. #397) filed October 29, 2009 be and hereby is **OVERRULED**.

Dated this 25th day of January, 2010, at Kansas City, Kansas.

            s/ Kathryn H. Vratil
            KATHRYN H. VRATIL
            United States District Judge